Clarence Paul **HULSEY** and United States Fidelity & Guaranty Company, Appellants,

v.

**COMMONWEALTH** of Kentucky **CRIME VICTIMS COMPENSATION BOARD**, Appellee.

Court of Appeals of Kentucky.

March 5, 1982.

As Modified March 19, 1982.

C. Dant Kearns, Stites, McElwain & Fowler, Louisville, for appellants.

Joseph R. Johnson, Asst. Atty. Gen., Steven L. Beshear, Atty. Gen., Frankfort, Chester F. Zoeller, Jr., Haynes, Mobley & Zoeller, Louisville, for appellee.

Before COOPER, HOWARD and WILHOIT, JJ.

WILHOIT, Judge.

Clarence Paul Hulsey and the United States Fidelity & Guaranty Company (U.S.F. & G.) appeal from a summary judgment of the Jefferson Circuit Court holding that the Crime Victims Compensation Board should recover $5,313.00 from the appellants, which is the amount of an award made by the Board to the appellant Clarence Paul Hulsey.

On December 30, 1976, while in the course of his employment as an employee of a wrecker service, Mr. Hulsey was the innocent victim of a crime which involved a serious gunshot wound to his left leg. On March 31, 1978, the Crime Victims Compensation Board awarded him $5,313.00 for

medical expenses and lost wages. He had also applied for workers' compensation benefits and on June 18, 1979, the Workers' Compensation Board approved a lump sum settlement to Mr. Hulsey of $15,000.00. The appellant U.S.F. & G. is the workers' compensation carrier for the wrecker service, and in the settlement of the workers' compensation claim, it agreed to indemnify Mr. Hulsey against any successful claim for reimbursement by the Crime Victims Compensation Board of the award paid by it to him.

This action was begun by Mr. Hulsey seeking recovery in tort against third parties for his injuries. The Crime Victims Compensation Board intervened, joining U.S.F. & G. as a defendant. Among other things, the Board alleged that it was entitled to reimbursement of the amount of the crime victim's award from Mr. Hulsey, and U.S.F. & G. by reason of its agreement with him. The trial court agreed and granted the summary judgment appealed from.

The principal question raised on this appeal is whether the Crime Victims Compensation Board is subrogated to the right of a crime victim to receive workers' compensation benefits when its award to the victim is based on the same injury which gives rise to a workers' compensation claim. We believe that it is.

KRS 346.170(2) provides that if an award is made to a crime victim:

the state is subrogated to all the claimant's rights to receive or recover benefits or advantages, for economic loss for which and to the extent only that compensation is awarded from a source which is, or, if readily available to the victim or claimant would be, a collateral source.

Contrary to the appellants' argument, we are of the opinion that a workers' compensation award is a benefit paid for "economic loss" and from a "collateral source" as those terms are used in the subsection of the statute.

It is plain from a reading of our crime victims compensation act (KRS ch. 346) that in speaking of "economic loss" it refers to such things as out-of-pocket expenses, medical expenses, and expenses for services made necessary by the victim's injury, as well as loss of earnings by him or loss of support by his survivors. KRS 346.-130. The very purpose of the workers' compensation statutes is to compensate an employee for wages lost and anticipated to be lost in the future because of a work-related injury which has impaired the worker's earning power. *Princess Coals Inc. v. Stapleton*, Ky., 435 S.W.2d 62 (1968). This is also true where the award, as here, was made under the then-existing scheduled benefits section of the statutes, KRS 342.-730(1)(b). Such an award is not for the physical injury itself, as is contended by the appellants, but is one where the effect of the injury on earning capacity is presumed to be that set forth in the schedule. *Princess Coals Inc., supra.*

Read in context, the term "collateral source" appears to mean a source other than the perpetrator of the crime. (Subsection (1) of KRS 346.170 provides for subrogation to the victim's rights to recovery from him.) It certainly is intended to include payments made to the victim from the sources listed in KRS 346.140(b), (c), and (d) which include payments "[u]nder any contract of insurance wherein the claimant is the insured or beneficiary[.]" The workers' compensation award to Mr. Hulsey was paid by U.S.F. & G. under an insurance contract wherein he was a beneficiary.

The subrogation provisions of KRS 346.170 and the award reduction provisions of KRS 346.140 strongly evince a policy that a crime victim not recover twice for the same damage. Our conclusion in this respect is further buttressed by the expressed intention of the General Assembly that the purpose of the statutes establishing crime victims compensation is to compensate "*needy* residents of the Commonwealth of Kentucky who are innocent victims of criminal acts." KRS 346.010 (emphasis added).

We also believe that Mr. Hulsey is in the same position as an injured party who has recovered basic reparation benefits

from a reparation obligor under the Motor Vehicle Reparation Act and then recovers compensation from the tortfeasor for the same damages covered by the basic reparation benefits. It has been held that in such a situation the injured party is no longer legally entitled to recover these same damages for his own use and benefit, and when he does, he becomes a trustee for the reparation obligor of so much of the recovery as represents payment for the same damages covered by the basic reparation benefits. *State Farm Mutual Automobile Insurance Co. v. Fletcher*, Ky., 578 S.W.2d 41 (1979). For this reason, KRS 342.180 which exempts workers' compensation benefits from the claims of creditors does not appear to us to have any application to this case.

The judgment of the circuit court is affirmed.

All concur.