**Robert RAMAGE and Robin Ramage for wrongful death of Ryan Christopher Ramage, a minor and Robin Ramage, Individually, Plaintiffs–Appellees,**

v.

**ALABAMA INSURANCE GUARANTY ASSOCIATION, Defendant–Appellant.**

**ALABAMA INSURANCE GUARANTY ASSOCIATION, Plaintiff–Appellant,**

v.

**Robert RAMAGE, Robin Ramage, et al., Defendants–Appellees.**

No. 90–1320.

United States Court of Appeals, Fifth Circuit.

Dec. 26, 1990.

On Petition for Rehearing Jan. 31, 1991.

Thomas W. Tyner, Aultman, Tyner, McNeese, Weathers & Ruffin, Hattiesburg, Miss., Ollie L. Blan, Jr., Allwin E. Horn, III, Spain, Gillon, Grooms, Blan & Nettles, Birmingham, Ala., for Alabama Ins. Guar. Ass'n.

Jolly W. Matthews, Walter C. Ferguson, Ingram & Matthews, Hattiesburg, Miss., for Ramage.

John D. Price, Wise, Carter, Child & Caraway, Jackson, Miss., for Home Indem. Ins. Co. and Home Indem. Co.

Before WISDOM, GEE, and HIGGINBOTHAM, Circuit Judges.

GEE, Circuit Judge:

Today we decide whether the district court erred in finding the Alabama Guaranty Insurance Association (the "AGIA") solely liable as the successor in interest to the Early American Insurance Company (the "EAIC"), an insolvent insurer, for the EAIC's obligation to pay an agreed settlement judgment to satisfy claims upon an EAIC policy. We also decide whether the district court properly held that the recovery of post-judgment interest is not limited by the AGIA's statutory per claim limit on total liability. We conclude that the district court correctly interpreted the underlying insurance policies and the relevant Alabama law and therefore affirm.

### Facts and Procedural History

Thomas Garner, while driving a Peterbuilt tractor-trailer, hit a car occupied by Mrs. Robin Ramage and her son Ryan Christopher Ramage. As a result of the collision, Mrs. Ramage suffered severe injuries; and her son died. J & J Trucking company owned the truck, but at the time of the collision J & J had leased it to Lloyd Busbee, Inc. ("Busbee"). The EAIC insured the trucks Busbee leased from J & J, including the one involved in the Ramage collision. The Ramage family sued Mr. Garner, J & J, and Busbee for damages in Mississippi state district court.

The parties settled on the day of trial for an aggregate sum of $400,000. Busbee, through the EAIC, agreed to pay $300,000 and J & J, through its primary carrier Chicago Insurance Co., agreed to pay $100,000. The state district court entered final judgments reflecting the settlement agreement. Chicago Insurance paid the $100,000 judgment against J & J, but the EAIC never paid the $300,000 judgment against Busbee that it had agreed to pay. An Alabama state court eventually delared the EAIC insolvent, and its debt to the Ramages remains unpaid to this day.

It is undisputed that the EAIC agreed to pay the judgment based on a policy in full force and effect at the time of the accident. The AGIA provides insolvency insurance for Alabama insurance carriers, such as the EAIC. Upon the EAIC's insolvency, the AGIA assumed the EAIC's unpaid claim obligations, subject to a statutory $150,000 per claim limit. As Busbee was both a resident of Alabama and an EAIC policyholder, the claims asserted against it are now rightfully asserted against the AGIA.

Upon learning that both the EAIC and Busbee were insolvent, the AGIA filed this declaratory judgment action in federal district court. The AGIA named as defendants the Ramages, The Home Insurance Company, and the Home Indemnity Company. The AGIA included the Home companies as defendants after learning that they insured J & J Trucking under a comprehensive motor vehicle liability policy commonly known as a "trucker's policy" and under a general contract liability insurance policy. The AGIA maintains that the Home Companies are liable for the remaining $300,000 settlement amount under the policies issued to J & J. In the alternative, the AGIA contends that either the EAIC policy or the statute creating the AGIA limit its total liability to the Ramages to $150,000. The AGIA also maintains that its total liability limit, whatever that may be, limits any accrued post-judgment interest, because the total amount owed for any claim, including interest, cannot exceed $150,000.

Each of the parties filed motions for summary judgment. The district court

granted judgment for the Ramages and the Home Companies, concluding that: (1) The relevant insurance policies impose liability for the settlement judgment solely upon the EAIC and therefore upon the AGIA; (2) the AGIA's $150,000 statutory cap on liability is a limit per claim, not a limit per occurrence; and (3) the $150,000 per claim liability limit is not applied to post-judgment interest.

## Discussion

■ The AGIA contends that Mrs. Ramage's personal injury action and her son's wrongful death action constitute one claim—and are thus subject to one $150,000 per claim limit—because they arose from the same car accident. The AGIA, however, entered into a stipulation with the Ramages in early 1988.[1] In the stipulation, the AGIA explicitly agrees that the EAIC and the Ramages entered the state court settlement judgment to satisfy "two claims" of $150,000 each. The district court found that the stipulation established the AGIA's acknowledgement that, although the claims arise from one occurrence, the Ramages assert two separate and distinct actions—a personal injury claim on behalf of Mrs. Ramage and a wrongful death claim on behalf of Ryan Christopher. Given the language of the stipulation, we conclude that the district court's finding that two claims exist is not clearly erroneous. A stipulation made by the AGIA binds them on appeal, just as it bound them before the district court. The settlement judgment, which consolidated the personal injury action with the wrongful death action, disposed of two claims, not one.

■ Having decided that the Ramages are entitled to recovery for two claims, we conclude that neither Alabama law nor the EAIC policy restrict the amount recoverable for claims arising from one *occurrence* to $150,000, but impose that limit *per claim*. Alabama code section § 27–42–8, one of several provisions governing the activities of the AGIA, defines a covered claim as: " . . . . . an unpaid claim . . . which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer . . ." In addition to the stated limits of a particular policy, the AGIA is further limited to: "only that amount of each covered claim which is in excess of $100 and is less than $150,000 . . ." The recovery for a claim asserted against the AGIA is thus restricted to the lesser of: (1) the AGIA's statutory limit; or (2) the underlying insurance policy from which the claim arises. Here, the statutory language places a limit on the liability amount for a claim—$150,000—but does not limit the number of claims which can be asserted from a particular occurrence. If a further limit exists so as to prevent recovery for both claims by the Ramages, it must be extracted from the EAIC policy, here the only other potential limit on the AGIA's liability.

The provisions of the EAIC policy leave the Ramages' claims wholly intact. An examination of the policy reveals—and the district court found—that the limit on the total amount recoverable for bodily injury per occurrence is $500,000 and the per claim limit is $150,000. An "occurrence", invoking the $500,000 cap, is defined in the

1. The stipulation states in relevant part:
    It is stipulated and agreed by and between Robert Ramage and Robin Ramage and Alabama Insurance Guaranty Association as follows: That Robert Ramage and Robin Ramage obtained a judgment against Lloyd Busbee, Inc., J & J Trucking, Inc., and Thomas Glen Garner in Civil Action Nos. 14,377 and 14,398 in the Circuit Court of Rankin County, Mississippi, in the amount of $400,000. The two cases were consolidated for trial.
    Civil Action No. 14,377 was a claim for the wrongful death of Ryan Christopher Ramage, the minor child of Robert Ramage and Robin Ramage, his mother and father. Civil Action 14,398 was a claim for the personal injuries sustained by Robin Ramage in the same

truck-automobile collision in which the minor child received fatal injuries. The *two claims were settled and a stipulation of the settlement was dictated into the court record.* However, the Defendants did not pay the settlement sum. *Each of the claims had a value of $200,000 and $100,000 has been paid and applied $50,000 on each claim leaving a judgment balance of $300,000.*
    It is stipulated and agreed further that the balance of the judgment, without accrued interest in Civil Action No. 14,377 in favor of Robert Ramage and Robin Ramage is $150,000 and the balance of the judgment, without accrued interest, in Civil Action No. 14,398 in favor of Robin Ramage is $150,000.

policy as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." The policy further limits the losses sustained by "one person as the result of any one occurrence" —the per claim limit—to $150,000. The Ramage's two claims—totaling $300,000— fall well within the $500,000 "per occurrence" limit. The two individual settlement awards that make up the $300,000 recovery —$150,000 for Mrs. Ramage's personal injury claim and $150,000 for the wrongful death claim—are also within the policy per claim limits. The EAIC policy therefore does not absolve the AGIA from liability to the Ramages.

### Liability of Other Insurers

The AGIA maintains that the Home Company policies, carried by J & J in addition to its primary insurance policy, reduce the AGIA's liability for the settlement judgment. J & J carried two different Home policies—one a "Home Insurance Policy" and the other a "Home Indemnity Policy."

■ The Home Indemnity policy states that it covers "[a]ny auto *except* ... all units owned by the named insured and leased to others." The district court found that J & J had leased the truck involved in the Ramage accident to Busbee and concluded, because of the lease exception language, that Home Indemnity was not liable under the terms of its policy with J & J. The AGIA does not dispute that Busbee leased the truck from J & J and offers no reason for disregarding the findings of the district court, other than to disconnect leased vehicles from the list of policy exceptions by reading "except" to extend only so far as the word "and" and no further. We conclude that the district court's interpretation of the policy is the more reasonable one—that "except" applies to each category of vehicles it precedes, including vehicles "leased to others". We hold that the district court did not err in finding that the Home Indemnity policy did not cover the truck involved in the Ramage accident.

■ J & J also carried a general liability policy with the Home Insurance Company. The general policy established broad form liability coverage for any contract liability incurred by J & J. Busbee is not a named insured under the policy. Nevertheless, the AGIA asserts that Home Insurance is liable for the settlement agreement amount as a result of the collateral carrier/lease contract between Busbee and J & J.

We disagree. The general liability coverage, as the district court appropriately concluded, was limited to named insureds. Busbee is not a named insured. J & J's contract with Busbee moreover makes no provision that Busbee be named as an insured.

The AGIA relies on a provision of the lease contract which provides:

Contractor [J & J] at its own expense, shall maintain continuous insurance coverage against public liability and property damage claims arising out of use of the Equipment by Contractor when bobtailed and when pulling *carrier's trailer at times and at places during which there is no performance of a trip on behalf of carrier.*

The AGIA interprets this clause to mean that J & J agrees to specify Busbee as an insured and indemnify and hold it harmless for any of Busbee's negligent use of trucks leased from J & J. We agree with the district court that the AGIA misinterprets the clause. The clause is not an indemnity clause, but rather a clause requiring that J & J maintain insurance for its own negligent acts during periods when the trucks are not being used by Busbee. A similar clause in the same contract requires Busbee to maintain adequate insurance. The parties entered into a settlement agreement assessing Busbee $300,000 for its negligence and J & J $100,000. The AGIA now cannot rely on the lease contract's provision to maintain insurance arbitrarily to reassign liabilities which the parties agreed to upon entering the settlement judgment.

### Post–Judgment Interest

■ The AGIA contends that even if it is found liable for both claims an award of

post-judgment interest is subject to the $150,000 cap on liability for each claim. The Alabama code does not address post-judgment interest or any allocation of costs. The broad provisions governing the construction and purpose of the laws confecting the AGIA, however, provide some guidance:

> *Construction of chapter.* This chapter shall be liberally construed to effect the purpose under Section 27–42–2 which will constitute an aid and guide to interpretation.

> *Purpose of chapter.* The purpose of this chapter is *to provide a mechanism for the payment* of covered claims under certain insurance policies, *to avoid excessive delay in payments and to avoid financial loss* to claimants or policyholders because of insolvency of an insurer.

The Ramages contend that limiting post-judgment interest to the per claim limit effects none of these purposes—rather, delaying tactics will be encouraged and policyholders may suffer a significant financial loss.

We agree. Interpreting a similar statute establishing the Louisiana Insurance Guaranty Association ("LIGA"), we held that the liberal construction and purpose clauses adequately opened the door for post-judgment interest in excess of the per claim statutory limits. *General Maritime Catering Co. v. First State Ins. Co. and Louisiana Guaranty Association,* 892 F.2d 386, 397–98 (1990). Alabama adopted the very same purpose and construction language in its code. Nothing in the Alabama statute distinguishes the AGIA from its Louisiana counterpart with respect to post-judgment interest. In the absence of Alabama case law to the contrary, we conclude that the district court did not err in allowing the Ramages to recover post-judgment interest without regard to the statutory claim limitations.

### Conclusion

We hold that the district court properly granted summary judgment for the Ramages and the Home Companies. We conclude that the district court did not err in interpreting the policy and statutory claim limitations, nor did it err in awarding post-judgment interest. The judgment of the district court is therefore

AFFIRMED.

### ON PETITION FOR REHEARING

Jan. 31, 1991.

Before WISDOM, GEE and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:

IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is hereby GRANTED. The judgment of the trial court and the mandate of this Court are vacated in the two respects addressed in the petition—the amount owed Appellees and the date from which post-judgment interest should commence to run. Expressing no opinion on either matter, we remand the cause to the trial court for further consideration of it in these two respects only.